# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 232 and 01 C 233 | DATE | 11/16/2004 |
| CASE TITLE | USA ex rel. Patrick Page, # N-21564 vs. Stephen Mote, Warden, Pontiac Correctional Center | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Petitions for Writ of Habeas Corpus

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER ORDER. For the foregoing reasons, Page's petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 are denied. Any pending motions are denied as moot. Both cases, 01 C 232 and 01 C 233, are terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| X | Docketing to mail notices. |
| X | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

NOV 17 2004
date docketed

docketing deputy initials

Document Number

46

RJ — courtroom deputy's initials

U.S. DISTRICT COURT

2004 NOV 15 PM 3: 21

date mailed notice

Date/time received in central Clerk's Office

mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel.   )
PATRICK PAGE, # N-21564,   )
  )
                Petitioner,   )    Nos. 01 C 232
  v.   )           01 C 233
  )
STEPHEN MOTE,[1] Warden,   )    Judge Joan B. Gottshall
Pontiac Correctional Center,   )
  )
                Respondent.   )

**DOCKETED**

**NOV 1 7 2004**

## <u>MEMORANDUM OPINION AND ORDER</u>

Following separate jury trials in the circuit court of Cook County, Illinois, Petitioner, Patrick

Page ("Page"), was twice convicted of murder and sentenced to death. After the Illinois Supreme

Court denied his direct and post-conviction appeals, Page petitioned this court for a writ of habeas

corpus. Before the court are Page's two petitions for a writ of habeas corpus, one for each murder

conviction, which the court has consolidated for purposes of this opinion. For the reasons stated

below, the court denies both petitions in their entirety.

## I.    BACKGROUND

### A. Procedural History

Page's habeas claims regard separate murder convictions in the circuit court of Cook County,

Illinois. In May 1990, Page was tried for the killing of John Goodman ("Goodman"), and the jury

found him guilty of murder ("Goodman murder"). After a two-stage sentencing hearing, the court

sentenced Page to death. Seven months later, Page was tried for the murder of Charles Howell

---

[1] As Stephen Mote is currently the Warden at Pontiac Correctional Center, the court substitutes him as respondent. *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254.



("Howell"), and the jury returned a guilty verdict ("Howell murder"). Following a two-stage sentencing hearing, the court again sentenced Page to death.

Page appealed both decisions to the Illinois Supreme Court, and both were affirmed. *People v. Page*, 155 Ill.2d 232 (1993) ("*Page I*"); *People v. Page*, 156 Ill.2d 258 ("*Page II*") (1993). Page then filed a *pro se* post-conviction petition in the Cook County Circuit Court regarding the Goodman murder. Soon afterwards, appointed counsel filed a second post-conviction petition in the same court regarding the Howell murder. The trial court consolidated the petitions, and, on August 8, 1997, dismissed the consolidated petition. Page appealed, and the Illinois Supreme Court affirmed. *People v. Page*, 193 Ill.2d 120 (2000) ("*Page III*"). Subsequently, Page filed separate habeas petitions with this court, one for each murder conviction and death sentence.

On January 11, 2003, former Illinois Governor George Ryan commuted Page's death sentences to natural life in prison without the possibility of parole. Thereafter, on September 4, 2003, Page amended his petitions to remove those claims challenging his death sentences. Thus, pending before this court are Page's challenges to his convictions for both the Goodman and Howell murders. As many of these claims overlap and repeat, the court has consolidated Page's claims into this single opinion.

## B. Trial Testimony

Before reviewing the facts underlying the Goodman and Howell murders, some additional background is necessary. The Goodman murder was not Page's first murder conviction. Rather, in September of 1988, Page was tried for the murder of Dale Andrew Devine ("Devine") in Will County, Illinois, and received a 60-year term of imprisonment ("Devine murder"). Although the Will County proceedings are not the subject of this review, certain facts regarding the case are relevant to the

present claims, and will be referenced throughout this opinion.

The following recitation of facts is drawn from the Illinois Supreme Court's ruling on Page's direct and post-conviction appeals, which facts Page does not challenge. 28 U.S.C. § 2254(e)(1); *Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002) (unless a habeas petitioner provides clear and convincing evidence to the contrary, a determination of a factual issue by a state court is presumed correct for the purposes of habeas review).

### 1. *Goodman Murder*

The details surrounding Goodman's murder derive mainly from Page's court reported-confession, which was admitted at trial. Page stated that, on Wednesday, May 6, 1987, he and Gerald Feinberg[2] ("Feinberg") made plans to rob and kill Goodman, because Page held a grudge against Goodman. On the next day, Page and Feinberg visited Goodman's house in Olympia Fields, Illinois. Once inside the house, Page cornered Goodman in the bathroom and asked him about some pornographic photographs. When Goodman began to laugh, Page revealed a large knife, and stabbed Goodman four times in the chest, killing him. Page and Feinberg then put Goodman's body in the bathtub, wiped the house clean of their fingerprints, and stole Goodman's credit cards. Page and Feinberg proceeded to wrap the victim's body in a sheet and a rug, and placed it in the trunk of Goodman's car. The pair then drove to a rural area in Wisconsin, dug a hole, and buried the body. Over that weekend, Page and his friends drove around in Goodman's car, stole the television from Goodman's empty house, and used the stolen credit cards. The following week, Page abandoned the car at a nearby train station.

Numerous trial witnesses corroborated Page's confession. One witness testified to seeing Page

---

[2] Page was originally indicted with a co-defendant, Gerald Feinberg. Their cases were severed, and Feinberg later pled guilty to murder.

and Feinberg at Goodman's home shortly before the murder. Other witnesses admitted to using Goodman's credit cards and stealing his television. Police witnesses testified that they found significant quantities of blood in the bathroom and in several other areas of Goodman's house. Additionally, investigators lifted Page's fingerprints from various items in the house. The police also found Goodman's car at a train station, and a pool of blood in the trunk. Lastly, police found Goodman's body buried in a rural area in Wisconsin, and an autopsy revealed that the victim had sustained nine stab wounds to the chest, four of which had entered Goodman's heart and caused his death. Page did not present any evidence in his defense.

### 2. *Howell Murder*

Page also confessed to the murder of Charles Howell. Page stated that he and Feinberg killed Howell in the fall of 1985, and buried the body in an Illinois forest preserve. Page explained that he murdered Howell after killing Howell's roommate, Devine, because he feared that Howell would become suspicious of Devine's disappearance.[3] Page also explained that prior to the murder, he and Feinberg drew a map on Page's basement floor of where they would bury Howell, went to the proposed burial site, and dug a hole. The two then lured Howell to the site under the pretense of having a party. When they arrived, Page stabbed Howell. When the victim tried to run, Feinberg beat him in the head with a large stick. After Howell died, Page and Feinberg dumped his body in the hole, covered it with dirt and branches, and started a fire over the grave.

Trial witnesses corroborated Page's confession. The victim's mother testified that on the night of the murder, her son received a telephone call, got in his car, and she never saw him again.

---

[3] As mentioned above, Page was tried and convicted of the Devine murder in Will County, Illinois. During the fall of 1985, Page, Feinberg, and another accomplice, tied up Devine with an extension cord, drove him to a wooded area, injected air into his veins, slashed his throat, stabbed him, and burned his body over a shallow grave.

That same night, Page's ex-girlfriend testified that she, Page, Feinberg, and Howell were hanging out in the basement of Page's mother's house. She stated that the group was sitting around and then Page said he had arranged for a drug deal in a nearby forest preserve. Page, Feinberg, and Howell left together at around 9:00 p.m. She then explained that the following morning, at around 2:00 a.m., Page and Feinberg returned with Howell's car, but without Howell. She also testified that Page looked "scuffed up" when he returned home. In addition, police investigators found a drawing on Page's basement floor of the burial site Page referred to during his confession. Police later recovered Howell's body from the grave site, and also found a piece of wood nearby with hair and clothing fibers attached to it. An autopsy revealed that Howell's clothes showed numerous cuts consistent with stab wounds and the medical examiner opined that the cause of death was multiple stab wounds. Page did not present any evidence in his defense.

## II.   STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams*, 529 U.S. at 404. To demonstrate an "unreasonable application" of clearly established federal law, a habeas petitioner must establish that the state court unreasonably applied the controlling legal rule to the facts of the case. *Id.* at 407.

5

Moreover, the state court's application of Supreme Court precedent must be more than incorrect or erroneous. Rather, it must be "objectively" unreasonable. *Lockyer v. Andrade*, 123 S.Ct. 1166, 1174 (2003); *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)(state court decision must lie "well outside the boundaries of permissible differences of opinion"); *see also Rice v. McCann*, 339 F.3d 546, 548 (7th Cir. 2003)(state court application of federal law is reasonable if state decision is at least minimally consistent with facts and circumstances of case).

But before a federal court will consider a habeas corpus petition, a petitioner must satisfy several procedural requirements. First, a petitioner must exhaust state remedies – that is, the petitioner must give the state's highest court an opportunity to address each claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). To satisfy this requirement, a petitioner must fairly present to the state judiciary both the operative facts and legal principles that control each claim. *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). A petitioner's failure to fairly present each habeas claim to the state's highest court in the time and manner required leads to a default of the claim, thus barring the federal court from reviewing the claim's merits. *Boerckel*, 526 U.S. at 848. A federal court, however, may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## III.   HABEAS CLAIMS

### A.  Misapplication of Collateral Estoppel

Page first argues that the Goodman and Howell trial courts incorrectly applied the doctrine of collateral estoppel to prevent him from challenging the voluntariness of his confessions. In both cases,

Page moved to suppress his statements. And in both cases, the court denied Page's motion, finding that the issue had already been determined by a Will County trial court. Page challenges these decisions.

Before considering the claim's merits, some background is necessary. In the four days following Page's arrest, from May 16th through 20th, 1987, Page confessed to three murders. On May 16th, 17th, and 18th, and the morning of the 19th, Page made a number of statements regarding the Goodman murder. Then, during the afternoon of the 19th, Page provided authorities with formal confessions concerning the Devine and Howell murders. The first of these three murders tried was the Will County prosecution of the Devine murder. In that proceeding, Page moved to suppress his custodial statements. The Will County motion did not specify what statements were being challenged by Page. But following a six-day hearing, at which parties introduced extensive testimony covering the entire period of time Page spent in custody, and concerning the circumstances of all the statements made by Page while in custody, the Will County judge denied Page's suppression motion. The statements were admitted, the jury convicted, and Page did not challenge the ruling on appeal. *People v. Page*, 553 N.E.2d 753 (1990).

The next case tried was the Goodman murder. The State sought to introduce Page's statements involving his participation in the murder, and Page moved to suppress claiming that his statements were not voluntarily given. Specifically, Page contended that police investigators prevented him from seeing his family, promised him leniency in exchange for a confession, deprived him of food, and continued the interrogation after he invoked his right to counsel. Page also claimed that he was prepared to call witnesses who did not testify in the Will County case, but who could have provided testimony of similar police misconduct while they were held in connection with the

Goodman investigation. The State responded by moving to strike Page's motion, arguing that the voluntariness of Page's statements had already been decided by the Will County court. The trial judge agreed. Page advanced the same argument in the Howell prosecution, and that court similarly invoked the doctrine of collateral estoppel to deny Page's challenges. Page appealed both rulings to the Illinois Supreme Court, and the court twice affirmed the trial judges' decisions. *Page I*, 155 Ill.2d at 246-59; *Page II*, 156 Ill.2d at 284-86. Page now appeals to this court for relief.

Page's argument to this court is twofold, and in the alternative. First, he claims that the Goodman and Howell courts applied the doctrine of collateral estoppel too broadly because the Will County hearing concerned only the circumstances surrounding the Devine statements, and did not determine the admissibility of the statements he made with respect to the Goodman and Howell murders. Second, Page claims that even if the Will County hearing determined the admissibility of all his statements, he raised "new allegations" in support of his motion in the Goodman and Howell cases, and the trial courts should have conducted separate hearings to consider previously undetermined matters.

This court's review begins with Illinois Supreme Court analysis of the claims to determine if that court's decisions were contrary to or involved an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). In reviewing the Goodman conviction, the Illinois Supreme Court began by outlining the doctrine of collateral estoppel, and cited relevant authority, including United States Supreme Court precedent, to show that collateral estoppel is often invoked in a criminal context. *Page I*, 155 Ill.2d at 248-49. The court also reviewed the specific constitutional concerns raised when collateral estoppel is used to defeat a motion to suppress. *Id.* at 249-50. After a thorough analysis, the court found that the doctrine could be invoked by the prosecution against the

accused in the context of a suppression motion. *Id.* at 250.

The court then conducted an extensive discussion of the doctrine's requirements and concluded that all the requirements had been met. *Page I,* at 250-60. In reaching this conclusion, the court reviewed the entire Will County record and found that the admissibility of each of Page's statements was actually litigated and determined by the Will County trial court. The court noted that the witnesses who testified at the Will County hearing spoke to the circumstances surrounding all of the statements, not just the Devine statements. The court also noted that the Will County motion to suppress did not specify which particular set of statements was being challenged, and did not limit its scope to the statements concerning the Devine murder. Lastly, the court pointed out that even the language used by the Will County trial judge in his ruling did not distinguish between different sets of statements. The court therefore concluded that the Will County court, in rejecting Page's claims, "necessarily determined issues pertinent to all three sets of statements made by [Page] while in police custody." *Id.* at 254. Accordingly, the Illinois Supreme Court found that the Goodman trial court properly applied the doctrine of collateral estoppel. *Id.* at 259.

The Illinois Supreme Court revisited the issue again in reviewing the Howell conviction. The court again examined the Will County record, and the Howell record, and found nothing to dissuade it from its earlier conclusion that the Will County judge's ruling on the admissibility of the Devine statements also resolved the factual issues pertinent to the Goodman and Howell statements. *Page II,* 156 Ill.2d at 284-85. And the court once again affirmed the trial court's decision invoking collateral estoppel. The Illinois Supreme Court's decisions in both the Goodman and Howell cases are not unreasonable.

9

As the Illinois Supreme Court's extensive discussion reveals, the Will County judge considered all of the statements when he was assessing the voluntariness of the Devine Statement. Thus, it was appropriate for the Cook County trial court to decline to retry this issue. Collateral estoppel is often applied in criminal cases, with "realism and rationality." *Ashe v. Swenson*, 397 U.S. 436, 444 (1970). The collateral estoppel doctrine bars re-litigation of an issue of ultimate fact between the same parties, once that issue has been determined by a valid and final judgment. *Id.* at 443. For the doctrine to apply, the following elements must be met: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior proceeding. *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000) (internal citations omitted).

These requirements are easily met here. The issue sought to be precluded, the voluntariness of Page's statements, was the same in both the Will County and Cook County proceedings. The record demonstrates that the parties vigorously litigated the issue over a six-day hearing in Will County Circuit Court, and the court's findings of voluntariness were, of course, essential to the denial of Page's motion to suppress. And Page, the party in both proceedings, was represented in the Will County action. Thus, it was appropriate for the Goodman and Howell trial courts to invoke collateral estoppel, and the Illinois Supreme Court's decisions upholding these rulings are consistent with the facts and circumstances of the case. *Rice*, 339 F.3d at 549.

But Page also raises the alternative argument that even if collateral estoppel barred relitigation of the voluntariness of his statements, he had new evidence to support his Goodman and Howell suppression motions that the Will County court had not considered. Thus, Page maintains that the

Goodman and Howell courts should have conducted separate hearings to consider previously undetermined matters. Put another way, Page argues that his additional evidence constituted an exceptional circumstance that justified relaxing the collateral estoppel doctrine.

In addressing this argument, the Illinois Supreme Court reviewed Page's purported additional evidence, and found that it did not warrant a separate hearing. *Page I* at 257. Page's new evidence consisted of allegations that he did not get enough food while in custody, and that he had other witnesses that would testify about similar police mistreatment while in custody for the Goodman murder. Regarding his first allegation, the court found that it directly contradicted Page's own Will County testimony, and thus did not deserve serious consideration. The court similarly dismissed Page's second allegation - that he had additional witnesses to testify about similar police misconduct - because Page never made an offer of proof as to what, if anything, the additional witnesses could offer. Accordingly, the court concluded that Page's efforts to present new evidence did not constitute an exceptional circumstance that would justify relaxing the collateral estoppel doctrine. *Page I* at 259. This determination is not unreasonable.

Page has not shown how any of this alleged new evidence would have likely altered the Cook County trial court's decision. AEDPA restricts this court's power to overturn the state court's ruling; consequently, it may do so only if that decision is not "at least minimally consistent with the facts and circumstances of the case." *Searcy v. Jaimet*, 332 F.3d 1081, 1089 (7th Cir. 2003). Here, the Illinois Supreme Court carefully considered all of Page's purported new evidence placed before the Cook County trial courts, and determined that the evidence did not warrant the holding of a separate hearing. This court cannot say that its decision to uphold the Cook County trial court's ruling was unreasonable, and Page has presented no argument to convince the court otherwise. Thus, Page's

11

alternative argument must also fail, and his first claim for relief is therefore denied.

## B. Ineffective Assistance of Counsel

Page claims that his trial counsel was constitutionally ineffective in both the Goodman and Howell cases. To prevail on a claim of ineffective assistance of counsel, Page must establish both deficient attorney performance and prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first prong of the *Strickland* standard, Page must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. To satisfy the *Strickland* prejudice element, Page must demonstrate that it is reasonably likely that, but for his counsel's errors, the decision reached would have been different. *Id.* at 696. If Page is unable to demonstrate both *Strickland* prongs, his ineffective assistance claim will not succeed. *Id.* Moreover, in the context of a federal habeas petition governed by AEDPA, the petitioner must do more than merely convince the federal court that the state court applied *Strickland* incorrectly, but must demonstrate that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002) (internal citations omitted). With these standards in mind, the court will first consider those claims relating to the Goodman murder.

### 1. *Goodman Murder*

Page's trial counsel decided to pursue a theory of defense in which Page would admit to voluntary manslaughter, but contest the murder charge. To do this, defense counsel attempted to prove that Page and Goodman were engaged in mutual combat, which resulted in Goodman's death. Specifically, counsel stated during opening arguments that, immediately prior to the murder, Page and Goodman argued over some photos of Page's accomplice, Feinberg, engaging in homosexual activity. Counsel further stated that when Goodman refused to surrender the photos, Page stabbed him.

Then, during cross-examination of a prosecution's witness, defense counsel was able to elicit

testimony that Goodman and Page argued over some photographs for 10 to 15 minutes, and that Page

punched and stabbed Goodman when Goodman refused to move from the bathroom doorway. But

defense counsel had to change his defense theory during closing arguments after the trial judge

refused to tender a voluntary manslaughter instruction to the jury. Accordingly, Page's counsel

decided to abandon the mutual combat theory, and argued that the jury should not find Page guilty of

murder because he lacked the intent to kill. Page finds numerous faults with this representation.

### a.  *Cronic*

Page first claims that counsel did not subject the State's case to meaningful adversarial testing

and cites *United States v. Cronic*, 466 U.S. 648, 658-62 (1984), for support. In *Cronic*, the Court

acknowledged that certain circumstances are so prejudicial that ineffective assistance of counsel is

presumed. *Id.* at 658-62. One of the circumstances identified by the *Cronic* Court is when trial

counsel fails to subject the prosecution's case to meaningful adversarial testing. *Id.* at 659. Page

raised this claim on direct appeal, and the Illinois Supreme Court denied relief. *Page I*, 155 Ill.2d at

265-66.

Although not at all clear from Page's submissions, it appears that Page bases his *Cronic* claim

on his trial counsel's decision to concede Page's guilt by admitting to voluntary manslaughter.

In other words, Page argues that his counsel's defense theory did not test the fundamental fact of

whether Page was the person who actually killed Goodman. The Illinois Supreme Court addressed

this argument and noted that Page gave express consent to present a voluntary manslaughter defense.

*Id.* at 262. The court cited a portion of the trial record wherein the court asked Page directly if he

consented to the defense, and Page agreed. *Id.* Citing state and federal authority, the court also

13

found that counsel's strategy was reasonable because it follows the not uncommon practice of urging conviction on a lesser charge to avoid conviction on a greater charge. *Id.* Lastly, the court reviewed counsel's performance in its totality and concluded that it did not rise to the level of an actual or constructive denial of the assistance of counsel. *Id.* at 265. The court found that "counsel thoroughly tested the State's proof of guilt, cross examined witnesses, objecting, and moving for directed verdicts when prosecution rested." *Id.* The court therefore concluded that trial counsel's performance did not rise to the level of *per se* ineffectiveness described in *Cronic*. This represents a reasonable application of *Cronic*.

Generally, broad claims of incompetence do not necessarily support an inference that the circumstances were so egregiously prejudicial that ineffective assistance is presumed. *Hollenback v. United States*, 987 F.2d 1272, 1275 (7th Cir. 1993). This is especially true when the criticisms attack counsel's overall trial strategy. *See Strickland*, 466 U.S. at 690 (counsel's strategic choices do not often support claims of ineffective assistance). The plentiful evidence against Page presented counsel with a daunting task. To confront this task, trial counsel decided to contest the most serious charge, while admitting a lesser offense. While this strategy may not have been perfect, it was not illogical either.

Moreover, the record confirms that counsel did in fact subject the State's case to adversarial testing. Counsel cross-examined the prosecution's witnesses, made objections, moved for a directed verdict on all of the charges, and gave a closing argument. This is not the type of egregious case where counsel has entirely failed to subject the prosecution's case to meaningful adversarial testing. *See, e.g., Cooks v. Ward*, 165 F.3d 1283, 1296 (10th Cir. 1998) (despite counsel's failures at trial, prejudice could not be presumed where he was present in the courtroom, conducted limited cross-examination, made objections, and gave a closing argument). Accordingly, the court finds that the

14

Illinois Supreme Court's decision that trial counsel's assistance was not *per se* ineffective, was consistent with the facts and circumstance of the present case. Page's first claim is therefore denied.

### b. Failure to Present Evidence

Page next argues that his counsel did a constitutionally ineffective job of presenting evidence to support the voluntary manslaughter theory. Page raised a close variant of this claim on direct appeal, and the Illinois Supreme Court denied relief. *Page I*, 155 Ill.2d at 261-63. The court explained that, contrary to Page's criticisms, his counsel undertook considerable efforts to demonstrate the mutual combat aspect of the voluntary manslaughter theory. The court noted that counsel was able to elicit evidence of an altercation between Goodman and Page during cross-examination of one of the prosecution's witnesses. Additionally, even though Page did not testify, Page's formal statement was admitted in which Page claims that he stabbed Goodman after Goodman began laughing at him. And then later, the court explained, Page's trial counsel sought jury instructions on the serious provocation theory. In sum, the court found that Page's trial counsel did what they could to propound the defense. *Id.* at 262.

The Illinois Supreme Court's conclusion was not an unreasonable application of *Strickland*. Page has made no attempt to explain what else his counsel should have done with the available evidence. Nor does this court's independent review of the trial record reveal any obvious deficiencies in trial counsel's presentation of the evidence. Accordingly, Page has simply failed to demonstrate that his trial counsel's performance was deficient under *Strickland*. Page has also failed to explain how his trial counsel's alleged incompetency prejudiced him within the meaning of *Strickland*. Because Page has not alleged facts supporting either *Strickland* prong, the court finds that the Illinois Supreme Court did not apply *Strickland* to the facts of his case in an objectively unreasonable manner. Page's second claim is therefore denied.

### c. Failure to Discover Evidence

Page also argues that his counsel's pre-trial investigations failed to unearth sufficient evidence to support the voluntary manslaughter theory. Specifically, Page argues that his counsel did not locate police notes, witness statements, photographs, and physical evidence that would have corroborated the allegation that Page and Goodman were engaged in mutual combat immediately before the murder. Page raised this particular claim on post-conviction review, and the Illinois Supreme Court denied relief. *Page III*, 193 Ill.2d at 138-40. To reach this conclusion, the court thoroughly reviewed Page's additional evidence and found that it was either irrelevant or immaterial. The court therefore found that his counsel's failure to discover and present this evidence at trial did not constitute ineffective assistance. *Id.* at 139-40.

The Illinois Supreme Court's conclusion was not an unreasonable application of *Strickland*. The cited evidence is comprised mostly of hearsay statements, some double and even triple hearsay, referencing Feinberg's statements regarding the alleged homosexual advances that Goodman made immediately before the killing. Beyond obvious admissibility problems, the statements would not have benefitted Page's defense because, under Illinois law, an unwanted homosexual advance is not one of the recognized categories of provocation under the voluntary manslaughter offense. *Id.* at 138-39. The remaining "undiscovered" evidence consists of statements, photographs, video tapes, and magazines purporting to demonstrate that Goodman and Feinberg regularly engaged in homosexual activity. Page makes no attempt to explain how this evidence was material, or even relevant, to his voluntary manslaughter defense. In fact, as noted by the Illinois Supreme Court, this evidence had absolutely nothing to do with the murder. *Id.* at 138-39. Thus, Page's counsel cannot be found deficient for failing to discover and present this additional evidence. The court therefore

finds that the Illinois Supreme Court did not apply *Strickland* to the facts of his case in an objectively unreasonable manner, and therefore denies Page's third claim for relief.

#### d. Improper Closing Argument

Page also claims that his counsel was constitutionally ineffective for proposing during closing argument that Page was not guilty of murder because he lacked the intent to kill. Page raised this claim on direct appeal, and the Illinois Supreme Court denied relief. *Page I*, 155 Ill.2d at 264-68. The court acknowledged that Page was correct that his counsel's position was not a complete defense to murder charges because, under Illinois law, felony murder does not require the specific intent to kill. *Id.* at 264. But the court also explained that Page's trial counsel found themselves in the predicament of having to attempt to salvage a theory of the case, after the trial judge rejected their initial strategic choice by refusing to tender a voluntary manslaughter instruction. *Id.* The court then analyzed defense counsel's alternative theory under *Strickland* and found that counsel's closing argument did not prejudice Page, regardless of whether counsel's legal position was ultimately unsound. The court explained that the improper closing argument could not have prejudiced Page because of the "overwhelming" evidence of Page's guilt, which included eye-witness testimony putting Page on the scene of the crime, ample physical evidence linking Page to the murder, and detailed confessions to the crimes. *Id.* at 266-67. On this record, the court determined that Page could not establish that the result of the trial would have been different if counsel had not presented the improper closing argument. *Id.*

The Illinois Supreme Court's conclusion was not an unreasonable application of *Strickland*. The court correctly noted that *Strickland* allows a court to resolve an ineffectiveness claim by reaching only the prejudice prong, as a lack of prejudice renders irrelevant the issue of counsel's

alleged deficient performance. *Strickland*, 466 U.S. at 697. Here, the evidence against Page was indeed overwhelming, and the effect of counsel's legally unsound closing argument could not have meaningfully influenced the jury's verdict. As Page fails to make any argument whatsoever as to how the Illinois Supreme Court erred in its application of *Strickland* to his claim, Page's fourth claim must also fail.

### e. Failure to Call Gerald Feinberg to Testify

Page argues that trial counsel was constitutionally ineffective for not calling Feinberg as a witness. Page claims that Feinberg's would have testified that Goodman made an unwanted homosexual advance upon Page, which resulted in Goodman's death. Page argues that this testimony was critical to his voluntary manslaughter theory of defense.

Page never raised this claim in state court, and it is therefore procedurally defaulted. *Boerckel*, 526 U.S. at 845. But, in a one-line, passing reference in his reply brief, Page asserts that he has "cause" to excuse his default – namely that his trial counsel was constitutionally ineffective for failing to raise the claim on appeal. While the ineffective assistance of counsel can constitute "cause" to excuse a procedural default, *Freeman v. Lane*, 962 F.2d 1252, 1257 (7th Cir. 1992), Page's assertion of "cause" is not sufficient, as it is not substantiated by a citation to relevant authority, legal argumentation, or factual allegations. *See Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996) (court is not required to research and construct parties' legal arguments, especially when parties are represented by counsel.) Moreover, Page has made no attempt to show how he was prejudiced by his counsel's decision not to present Feinberg's testimony. In fact, even if Feinberg was called to testify that Goodman made a sexual advance towards Page, this evidence would not have aided Page's voluntary manslaughter theory. As noted by the Illinois Supreme Court, evidence of an

unwanted homosexual advance does not fall into one the recognized categories of provocation which would have entitled Page to a voluntary manslaughter instruction. *See Page III* at 138-39. Thus, the court cannot discern how Page was prejudiced from Feinberg's absence at trial. Because Page fails to argue either cause or prejudice to excuse his default, this court is barred from collaterally reviewing the claim. *Coleman,* 501 U.S. at 750. Page's fifth claim is therefore denied.

2. *Howell Murder*

a. Trial Counsel Presented No Defense

Page first argues that his defense counsel presented no defense. Page explains that counsel's sole contention during opening statements was that prosecution's case rested on Page's statements, and that the evidence would show that these statements could not be relied upon in determining the jury's verdict. Page then claims that counsel never put forth evidence to support this assertion. A review of Page's state court filings reveals that Page never presented this claim in state court. As a result, the claim is procedurally defaulted.

In determining whether an issue has been fairly presented to a state court, the court looks to whether the petitioner's argument to the state court: "(1) relied on pertinent federal cases; (2) relied on state cases applying constitutional analysis to a similar factual situation; (3) asserted the claim in terms so particular as to call to mind a specific constitutional right; or (4) alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Momient-El v. DeTella,* 118 F.3d 535, 538-39 (7th Cir. 1997). Moreover, for a constitutional claim to be fairly presented to a state court, both the operative facts and the "controlling legal principles" must be submitted to the court. *Rodriguez v. Scillia,* 193 F.3d 913, 916 (7th Cir. 1999). It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state claim was

made. Instead, the legal basis upon which a petitioner seeks relief must be fairly presented to the court. *See Momient-El,* 118 F.3d at 539.

Here, the only reference to this claim that can be discerned from Page's state court submissions is a one-line statement buried in an issue heading in his consolidated post-conviction petition filed with the Illinois Supreme Court. Beyond this passing reference, Page did not develop the argument with citations to authority, factual allegations, or legal argumentation. It is therefore unsurprising that the Illinois Supreme Court's opinion does not address the claim. Thus, because Page did not provide the state court with the legal or factual basis underlying his claim, the court finds that Page did not fully and fairly present his claim in state court. As a result, the claim is procedurally defaulted. *Boerckel,* 526 U.S. at 845.

It should also be noted that Page again asserts "cause" to excuse his procedural default by way of a one-line, conclusory statement that his appellate counsel was ineffective for not raising the claim on appeal. But, as discussed previously, Page's wholly unsupported assertions of cause are insufficient to overcome his procedural default. *Doherty,* 75 F.3d at 324.

### b. Trial Counsel Failed to Discover and Present Favorable Evidence

Page next claims that trial counsel did not discover sufficient evidence favorable to his defense. Page argues that if his trial counsel had properly investigated the case, counsel would have discovered that someone named Ken Cheney was also involved in Howell's murder. Because Page's statement did not reference this individual, Page claims that the disclosure of this individual's name would have cast doubt on the veracity of his confession. The court need not address the merits of this claim, as Page never raised the argument in state court. Because Page offers no explanation to excuse his procedural default, the court is barred from collaterally reviewing the claim. *Coleman,* 501 U.S. at

750.

### c. Failure to Call Gerald Feinberg to Testify

Page claims that his counsel was ineffective for not calling Gerald Feinberg as a witness. Page argues that Feinberg's testimony was important because Feinberg could have testified that Ken Cheney was involved in the Howell killing. And Page again claims that this disclosure would somehow have cast doubt on the veracity of his confession. But Page never made this argument in the state court, thereby procedurally defaulting the claim. *Boerckel*, 526 U.S. at 845. Because Page offers no explanation to excuse his procedural default, the court is barred from collaterally reviewing the claim. *Coleman*, 501 U.S. at 750.

### 3. Goodman and Howell Murders

Page raises the remaining ineffectiveness of counsel claims in both the Goodman and Howell petitions, but does not differentiate the claims to conform to the circumstances of a particular proceeding. Thus, the court can only assume that these last claims are factually and legally indistinguishable, obviating the need for separate treatment.

### a. Failure to Communicate with Will County Defense Counsel

Page claims that his trial counsel in both the Goodman and Howell proceedings should have communicated with his Will County attorneys to insure that the denial of his motion to suppress would be appealed to the Illinois Appellate Court. Relatedly, Page also claims that if his Cook County trial counsel had communicated with his Will County lawyers, then the Goodman and Howell counsel would not have drafted a suppression motion that raised the exact same issues as were raised in Will County, and his motion would not have been barred by collateral estoppel. Page raised the first portion of this claim on post-conviction review, and the Illinois Supreme Court summarily

rejected the argument as, "of course, [] an improper argument." *Page III*, 193 Ill.2d at 145. Page has

made no effort to articulate why the court's decision was unreasonable or contrary to federal

authority. Nor could he, as Page's Cook County attorneys were under no legal obligation to

participate in the Will County proceedings. Regarding the second portion of this claim, Page never

raised the claim in state courts, and it is therefore procedurally defaulted. Because Page offers no

explanation to excuse his procedural default, the court is barred from collaterally reviewing the claim.

*Coleman*, 501 U.S. at 750.

### b. Failure to Argue Motion to Suppress

Page next claims that his trial counsel in both the Goodman and Howell cases did not

persuasively argue the motions to suppress his statements. Specifically, Page claims that counsel

either failed to discover, or failed to present additional evidence, that supported his position regarding

the involuntariness of his statements. Page first raised this claim on post-conviction review, and the

Illinois Supreme Court denied relief. *Page III*, 193 Ill.2d at 140-45. To reach its conclusion, the court

carefully reviewed the additional evidence that Page claimed his trial counsel should have presented.

This evidence included Page's own affidavit, an affidavit from a police investigator, and affidavits from

Page's family members, all referencing Page's allegations of police mistreatment. The court found that

most of the new evidence was cumulative of the evidence that the trial court did consider, and the

remaining evidence was irrelevant to a determination of the voluntariness of Page's statements. The

court therefore found that trial counsel's performance was not deficient under *Strickland*. *Page III* at

145. This was not an unreasonable application of *Strickland*.

Page makes no effort to explain why his counsel should have presented this cumulative and

immaterial evidence, or how the evidence would have likely influenced the trial judge's ruling.

Because Page has not alleged facts supporting either *Strickland* prong, the court finds that the Illinois Supreme Court did not apply *Strickland* to the facts of his case in an objectively unreasonable manner.

## C.  Misuse of Peremptory Challenges

Page contends that, during the Howell trial, he was denied due process and equal protection when the State improperly used peremptory challenges to exclude a number of potential jurors based on their religious views or beliefs about the death penalty.  Page never raised this claim in state court, and thus has procedurally defaulted the claim.  *Boerckel*, 526 U.S. at 839.

In an attempt to resuscitate his procedurally defaulted claim, Page asserts that the State's use of peremptory challenges constituted a structural error in the trial mechanism.  *Brecht v. Abrahamson*, 507 U.S. 619 (1993)(structural defects require automatic reversal because they infect the entire trial process).  Page claims that this behavior was so egregious, that he did not have to raise the issue on appeal to preserve the claim.  Page's argument is without merit.

While a structural error may affect a court's cause and prejudice calculus, it does not alter the threshold requirement that habeas petitioners who bring constitutional claims to the federal courts after a state procedural default must demonstrate cause and actual prejudice before obtaining relief. *Engle v. Isaac*, 456 U.S. 107, 129 (1982).  Only in certain limited circumstances will a petitioner's procedural default be excused without showing cause and actual prejudice.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (only exception to cause and prejudice rule is fundamental miscarriage of justice).  As explained by the United States Supreme Court in *Murray v. Carrier*,

> In an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.

477 U.S. 478, 495-96 (1986).  Because Page makes no argument of actual innocence here, the

fundamental miscarriage of justice exception cannot rescue his claim. Accordingly, the court finds that Page has failed to overcome his procedural default, and the court is therefore precluded from reviewing his claim.

### D. Victim Impact Evidence

Page argues that the State violated his due process rights by presenting improper and irrelevant victim impact evidence during the Goodman prosecution. The subject evidence consisted of the testimony of Goodman's mother in response to a few questions regarding the memorial service held for the victim, and about other surviving relatives of Goodman. Page raised this claim on direct appeal, and the Illinois Supreme Court denied relief. *Page I* at 268-70. It should also be noted that in denying Page's claim, the court did not necessarily perform a substantive review of the claim's merits. Rather, the court considered the claim only to determine if the alleged error rose to the level of plain error. The court's review was so circumscribed because Page had not objected to the evidence at trial, and failed to include the objection in his post-trial motion – thereby waiving the claim on appeal. Generally, this finding constitutes an independent and adequate state ground, *Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003), which precludes this court from performing further collateral review. *Stewart v. Smith*, 536 U.S. 856, 860 (2002). Additionally, the state court's determination that "plain error" did not occur is, in itself, an independent and adequate state law ground which precludes federal review. *Willis v. Aiken*, 8 F.3d 556, 566 (7th Cir. 1993).

But even if considered on the merits, the claim cannot stand. As the Illinois Supreme Court found, "the challenged remarks were only incidental, coming from a single, brief witness during the course of a lengthy trial." *Page I*, 155 Ill.2d at 269-70. And it certainly cannot be said that admitted victim impact evidence was so unduly prejudicial that it rendered the trial fundamentally unfair. *See*

*Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (If the victim impact evidence presented is "so unduly prejudicial that it renders the trial fundamentally unfair," the Due Process Clause will provide the defendant with a mechanism for relief). Rather, the testimony at issue was brief and minimally consequential when viewed in the context of Page's lengthy trial and against the backdrop of the overwhelming evidence of Page's guilt. *See, e.g., Williams v. Chrans*, 945 F.2d 926, 947 (7th Cir. 1991) (trial not rendered unfair by use of brief victim impact statement when compared to amount of aggravating evidence admitted). Thus, Page has not demonstrated that he is entitled to relief, and his claim is therefore denied.

## E. Prosecutorial Misconduct

Page contends that the State violated his right to due process by failing to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963). Page also claims that the State violated *Napue v. Illinois*, 360 U.S. 264 (1959), by knowingly allowing its witnesses to present false and misleading testimony. As Page raises variations of these claims in both the Howell and Goodman petitions, a separate discussion of each claim is necessary.

### 1. *Goodman Murder*

#### a. *Brady* Claim

Page alleges that the State violated *Brady* by failing to disclose 1) evidence regarding Page's involvement in cult activities; and 2) evidence concerning Goodman's past homosexual conduct. Page raised these claims on post-conviction review, and the Illinois Supreme Court denied relief. *Page III*, 193 Ill.2d at 158-60. The court determined that Page's claims were deficient because none of the allegedly suppressed evidence was material to the defense. *Id.* at 160. The court therefore concluded that the State's withholding of such evidence did not constitute a *Brady* violation, and Page was not

entitled to relief. *Id.* This was not an unreasonable application of *Brady v. Maryland.*

To establish a cognizable *Brady* claim, a habeas petitioner must show that he was prejudiced by the State's failure to disclose favorable evidence. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). But prejudice exists only if the evidence at issue is *material*, meaning that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280. Page has made no attempt to show how the allegedly suppressed information would have altered the proceedings. Nor can this court discern how the evidence would have influenced the verdict. The evidence against Page was plentiful – including eye-witness accounts placing Page at the murder scene, substantial physical evidence linking Page to the murder, and a detailed confession admitting that the killing was premeditated. The court cannot fathom how the disclosure of evidence regarding Goodman's sexual orientation or Page's cult involvement would have changed the result of the proceedings, and Page has not offered a single argument to convince the court otherwise. Page's first set of *Brady* claims is therefore denied.

### b. *Napue* Claim

Page next argues that his constitutional right to due process was violated at the Goodman trial because the State failed to correct false testimony. Page raised this claim on post-conviction review, and the Illinois Supreme Court denied relief. *Page III* at 156-58. The claimed false testimony involved allegations regarding the sexual and drug history of Page's co-defendant, Feinberg. In reviewing this claim, the Illinois Supreme Court found that this testimony had absolutely nothing do to with Page's defense, and played a "minor role" in the State's case. *Id.* at 158. Thus, the court concluded that even if this testimony had been proven false, there was no reasonable likelihood that the challenged testimony would have affected the jury's verdict. *Id.* The court therefore found that

Page failed to establish a *Napue* violation.

This was not an unreasonable application of *Napue*. Page has offered nothing to show that the false testimony affected the results of the proceeding, nor can this court discern how the testimony somehow undermined the integrity of the jury's verdict. In light of the substantial evidence of Goodman's premeditated and deliberate murder, Page's argument that the false testimony played a decisive role in his conviction is wholly unconvincing. Thus, Page's *Napue* claim is similarly without merit.

### 2. *Howell Murder*

Page alleges that the State violated *Brady* by failing to disclose information regarding a third and fourth person allegedly involved in Howell's killing. Page raised a variant of this claim in his petition for post-conviction relief submitted to the Cook County Circuit Court, but then abandoned the claim on appeal to the Illinois Supreme Court. Because Page did not present his claim to the state's highest court, he did not exhaust his state court remedies, and his claim is now procedurally defaulted. *Boerckel*, 526 U.S. at 848. As Page offers no explanation to excuse his procedural default, this court cannot consider his claim on collateral review. *Coleman*, 501 U.S. at 750.

### F. Cumulative Effect

Lastly, Page claims that even if each alleged trial error in both the Howell and Goodman cases standing alone is harmless, the cumulative effect of all errors denied him a fair trial, in violation of *Lockhart v. Fretwell*, 506 U.S. 364 (1993). Page never presented this claim in state court in either case, and the claim is therefore procedurally defaulted. *Boerckel*, 526 U.S. at 848. Because Page offers no explanation to excuse his default, the court cannot consider the claim on collateral review. *Coleman*, 501 U.S. at 750.

Even if this court overlooked the default, the claim is without merit. To establish a cumulative effect violation, a habeas petitioner must prove that at least two trial errors occurred and that, "when considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000) (internal citations omitted). In other words, but for the trial court's multiple errors, the trial's outcome would have been different. *Id.* at 825. In this case, Page has not demonstrated that the trial court committed even one error in either the Goodman or the Howell proceedings. Without more, this court can find no ill effects to accumulate, and denies Page's final request for habeas relief.

## IV.   REQUEST FOR EVIDENTIARY HEARING

Page requests an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2), to further develop his claims. Federal habeas courts, however, are not an alternative forum for trying facts and issues that a habeas petitioner did not pursue in state court. *Williams*, 529 U.S. at 437. Section 2254(e)(2) provides that, if a factual basis of a claim was not developed in the state court, the federal habeas court cannot hold an evidentiary hearing unless the petitioner can show:

> (A) the claim relies on —
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Page does not argue that there is a new rule of constitutional law that was previously unavailable to him. Therefore, he must establish that the failure to develop the factual record in state

28

court, if any lack of development exists, was not his fault. *Williams*, 529 U.S. at 432. Page makes no effort to demonstrate such a showing, and thus, does not meet the statute's first requirement.

Nor does Page meet the statute's second prong. To do so, Page would have to allege facts that are sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would find him guilty of the murder at issue. *Harris v. McAdory*, 334 F.3d 665, 669-70 (7th Cir. 2003). Page has certainly not met this stringent standard. As a result, Page has failed to make the requisite showing for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2), and the court denies his request.

## V.   CONCLUSION

For the foregoing reasons, Page's petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 are denied. Any pending motions are denied as moot. Both cases, 01 C 232 and 01 C 233, are terminated.

IT IS SO ORDERED:

Enter: _____

JOAN B. GOTTSCHALL
United States District Judge

Date: November 16, 2004

29